UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRIAN WILSON,

    Petitioner,

v.

CHARLES GREEN, et al.,

    Respondents.

Civil Action No. 16-1906 (SDW)

OPINION

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Brian Wilson, filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following this Court's Order to Answer, the Government filed a response to the petition (ECF No. 4), to which Petitioner has replied. (ECF No. 5, 6). For the following reasons, this Court will deny the petition without prejudice.

**I. BACKGROUND**

Petitioner, Brian Wilson, is a native and citizen of Trinidad and Tobago who entered this country and became a permanent resident alien in January 1975.[1] (ECF No. 4 at 92). During his time in this country, Petitioner has developed a significant criminal history including a June 1995 conviction for attempted criminal sale of heroin in New York, a September 1996 conviction for conspiracy to commit the criminal sale of heroin in New York, and a December 2012 conviction for manslaughter in New Jersey. (*Id.* at 40-46). On March 15, 2013, Petitioner was released from

---

[1] In his original petition, Petitioner claimed to be an American citizen, a claim which has been rejected by the immigration courts and which is not born out by Petitioner's immigrant visa. (ECF No. 4 at 70-92). In his reply brief, Petitioner concedes that he is a native and citizen of Trinidad and Tobago and not an American citizen. (ECF No. 6 at 2).

1

prison following the completion of his manslaughter sentence[2] into immigration custody. (*Id.* at 48-49). At or near that time, Petitioner was provided with a notice to appear charging him with removability based on his criminal history. (*Id.*). Petitioner has remained in immigration detention since that date.

On June 18, 2014, Petitioner was ordered removed by an immigration judge. (*Id.* at 58-65). Petitioner appealed, and, after a remand from the Board of Immigration Appeals ("BIA"), was again ordered removed in June 2015. (*Id.* at 68-80). Petitioner appealed once more, and the BIA ultimately affirmed his order of removal and dismissed Petitioner's appeal on December 14, 2015. (*Id.* at 75-80). Following this final order of removal, however, Petitioner filed a petition for review with the Third Circuit, accompanied by a motion for a stay of removal. (*Id.* at 23). Pursuant to a standing order of the Third Circuit, Petitioner was granted a temporary stay pending a decision on his stay motion by a merits panel on December 23, 2015. (*Id.*). Following a counter motion by the Government, the Third Circuit entered an order denying Petitioner's motion for a stay of removal on February 16, 2016. (*Id.*). In that same order, the Third Circuit also vacated the temporary stay order. (*Id.*; *see also* Third Circuit Docket No. 15-4033 at Document 003112207673). On July 19, 2016, the Third Circuit entered a final order and opinion dismissing in part and denying in part Petitioner's petition for review. *Wilson v. Att'y Gen. of the United States*, --- F. App'x ---, 2016 WL 3902220 (3d Cir. 2016). On or about April 6, 2016, Petitioner filed the instant habeas petition. (ECF No. 1). The Government filed a response on May 23, 2016. (ECF No. 4). Petitioner thereafter filed his reply on or about June 27, 2016. (ECF No. 6).

---

[2] Petitioner's pre-trial detention on the manslaughter charge apparently ran for nearly ten years, and so he had received sufficient jail time credits that he had nearly completed his sentence at the time of his sentencing. (*See* ECF No. 4 at 3).

Following the denial of Petitioner's motion for a stay, the Government began to seek his removal to Trinidad and Tobago. On May 6, 2016, immigration officials sent a request for a travel document to the consulate for Trinidad and Tobago, accompanied by Petitioner's birth certificate, passport photo, fingerprint card, and order of removal. (ECF No. 4 at 24). The Government thereafter prepared to place Petitioner on a flight to Trinidad and Tobago on May 30, 2016. (*Id.*). Prior to that flight, however, the consulate requested a chance to interview Petitioner before issuing a travel document on May 16, 2016. (*Id.*). A telephone interview was arranged the following day, but Petitioner refused to answer questions over the phone as he could not verify to whom he was speaking. (*Id.* at 57). An in person interview with the consulate was therefore conducted on May 20, 2016. (*Id.*). Because Petitioner made some claims that there was some kind of litigation ongoing in his previous criminal cases, however, the consulate stated that it would need more information before issuing a travel document. (*Id.* at 57-58). The consulate indicated to Petitioner's deportation officer, however, that the travel document issuance procedure would move forward once the consulate received responses from immigration officials. (*Id.* at 58).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction,

3

and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Lemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

**1. The Statutory Basis for Petitioner's Detention**

In his initial habeas petition, Petitioner asserted that he was entitled to a bond hearing because he had been held pursuant to 8 U.S.C. § 1226(c) for some three years without a bond hearing in violation of *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015), and that his continued detention therefore violates Due Process. The Government instead argues that Petitioner is now detained pursuant to 8 U.S.C. § 1231(a). As the basis for Petitioner's detention controls Petitioner's entitlement to relief, this Court must first determine the statutory basis for Petitioner's detention before addressing that entitlement.

As this Court has explained,

> [w]hile § 1226(c) controls the detention of certain criminal aliens during the pendency of their removal hearings, § 1231(a) controls the detention of removable aliens "during" and "beyond" "the [statutory] removal period." *See Leslie v. Attorney Gen. of United States*, 678 F.3d 265, 269-70 (3d Cir. 2012). Thus, if Petitioner is currently in or beyond the statutory removal period, his detention must be controlled by § 1231(a). Pursuant to the statute, the removal period in a given alien's case begins on the latest of one of the following dates: the date that the alien's order of removal becomes administratively final; "if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or if the alien is detained on a basis other than his removal, the date on which he is released from that other detention. 8 U.S.C. § 1231(a)(1)(B). The Third Circuit in *Leslie* thus explained that "during a stay of removal" entered by a Court of Appeals "§ 1226, [and] not § 1231 governs detention." *Leslie*, 678

> F.3d at 270. . . . [I]t "is only through the grant of a stay or the overturning of a final order of removal that an alien's status reverts to pre-removal detention, the filing of an appeal or an application for a stay is insufficient to alter [an] alien's status. *See Leslie*, 678 F.3d at 268-70; *Llorente*[ *v. Holder*, No. 11-6940,] 2012 WL 119147[, at *5-6 (D.N.J. Apr. 10, 2012)]." *Granados v. Green*, No. 15-8577, 2015 WL 9216595, at *2 (D.N.J. Dec. 16, 2015).

*Granados v. Green*, No. 15-8917. 2016 WL 1572540, at *3 (D.N.J. Apr. 19, 2016).

In this matter, Petitioner received a final order of removal in December 2015 when the BIA dismissed his appeal. Although Petitioner's detention would have transitioned to § 1231(a) at that time, the granting of a temporary stay by the Third Circuit would have reverted him to § 1226(c) detention. *See Leslie*, 678 F.3d at 270. Once the Third Circuit vacated that stay order, however, Petitioner would have once again been subject to a final order of removal and thus would be within the removal period. *Id.* In any event, as the Third Circuit clearly denied and dismissed his petition for review in July, the Third Circuit's final order has been issued, and Petitioner has certainly entered the removal period by this point in time. Petitioner is therefore currently detained pursuant to § 1231(a). *Id.*; 8 U.S.C. § 1231(a)(1)(B).

**2. Petitioner is not entitled to relief under *Zadvydas***

Because Petitioner is currently detained under 8 U.S.C. § 1231(a), the propriety of his detention is governed by the Supreme Court's decision in *Zadvydas*, 533 U.S. at 701. In *Zadvydas*, the Court observed that § 1231(a) requires the Government to detain aliens subject to final orders of removal throughout the ninety day statutory removal period. *Id.* at 683. The Court likewise held that aliens may be detained beyond ninety days so long as their detention is "reasonably necessary" to effectuate the petitioner's removal. *Id.* at 689, 699. Based on these two observations, the *Zadvydas* Court concluded that the detention of removable aliens for a period of up to six

5

months following a final order of removal is presumptively reasonable under § 1231(a). *Id.* at 701. Where a habeas petitioner has been detained under § 1231(a) for more than six months following a final order of removal, however, an alien may challenge his continued post-final order detention by showing that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* To be entitled to such relief, a habeas petitioner must first "'provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' after which the Government 'must respond with evidence sufficient to rebut that showing.'" *Alexander v. Att'y Gen.*, 495 F. App'x 274, 276 (3d Cir 2012) (quoting *Zadvydas*, 533 U.S. at 701). "*Zadvydas* does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief." *Id.* at 276-77.

Initially, the Court notes that the propriety of Petitioner's habeas challenge depends entirely on the date that his order of removal once again became final. If that date was controlled by the date of the Third Circuit's final opinion and order, Petitioner would still be well within the ninety day removal period. If, however, this Court instead ran the removal period from the date on which the Third Circuit vacated the temporary stay order, February 16, 2016, Petitioner's post-final order detention would have reached six months on August 16, 2016, and Petitioner would currently be just beyond the presumptively reasonable period.

Even assuming that the earlier date applies, and that Petitioner's post-final order detention has surpassed the presumptively reasonable period, Petitioner is still not entitled to relief because Petitioner has failed to give this Court "good reason to believe" that there is no significant likelihood of removal in the reasonably foreseeable future. *Alexander*, 495 F. App'x at 276. The record before this Court contains no indication that there is any real impediment to Petitioner's

6

removal.  Indeed, the record suggests that the consulate of Trinidad and Tobago was prepared to move forward with issuing a travel document for Petitioner once Petitioner's claim to have ongoing litigation in his criminal cases was cleared up, and may already have done so.  The record further suggests that at least some of the delay in removing Petitioner was the result of Petitioner's own refusal to answer questions prior to the in-person meeting with a consulate representative.  Petitioner has provided no evidence to suggest that his removal process will not proceed smoothly and conclude in the foreseeable future, and to the extent that he has claimed such, the Government has provided sufficient evidence to show that it is significantly likely that Petitioner will be removed in the foreseeable future as the travel document procurement process appears to be proceeding.  As such, Petitioner has failed to meet his initial burden, and the Government has in any event rebutted Petitioner's argument that his removal is not likely in the reasonably foreseeable future, and as such Petitioner is not entitled to relief under *Zadvydas* at this time.  *Id.*  This habeas petition must therefore be denied without prejudice.

### III. CONCLUSION

For the reasons stated above, this Court will deny Petitioner's petition for a writ of habeas corpus (ECF No. 1) without prejudice.  An appropriate order follows.

September 1, 2016            *s/ Susan D. Wigenton*
                             Hon. Susan D. Wigenton,
                             United States District Judge